**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: June 10 2022**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.   22-40065 |
| | ) | |
| California Palms Addiction Recovery Campus, Inc., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge John. P. Gustafson |

<u>**MEMORANDUM DENYING MOTION TO ALTER OR AMEND A JUDGMENT; STAY OF BANKRUPTCY COURT ORDER [DOC. #94] PENDING APPEAL; MOTION FOR RELIEF FROM JUDGMENT; AND MOTION TO SUSPEND CHAPTER 7 PROCEEDINGS PENDING RESOLUTION OF POST-JUDGMENT MOTIONS**</u>

This case is before the court on four motions: *Motion to Alter or Amend a Judgment* filed on April 13, 2022, [Doc. #101]; *Motion to Stay Bankruptcy Court Order [Doc. #94][1] Pending Appeal* filed on April 18, 2020, [Doc. #102]; *Motion for Relief from Judgment* filed on April 19, 2022, [Doc. #103]; and *Motion to Suspend Chapter 7 Proceedings Pending Resolution of Post-Judgment Motions* filed on April 25, 2022, [Doc. #112].   The four motions are filed by Sebastian

---

1/   The title of this motion includes an apparently mistaken reference to "Doc. #94", which is actually the Notice of Order on Motion to Convert Case from Chapter 11 to Chapter.  The Order Granting Motion of the United States Trustee to Convert Case from Chapter 11 to Chapter 7 is Doc. #88, not Doc. #94.

Rucci ("Mr. Rucci"), "pro se," as Equity Security Holder for California Palms Addiction Recovery Campus, Inc. ("CPARC"), and by Steve Albenze, Esq., as "Attorney for Debtor California Palms."

A notice of appeal of this court's *Order Granting Motion of the United States Trustee to Convert Chapter 11 Case to Chapter 7 Pursuant to 11 U.S.C. §1112(b)* [Doc. #88] ("Conversion Order") has been filed. [Doc. #104].

The first three post-judgment motions, [Doc. ##101, 102, 103], were filed before the notice of appeal. The *Motion to Alter or Amend a Judgment* is brought under Rule 9023. [Doc. #101]. The *Motion for Relief from Judgment* is brought under Rule 9024. [Doc. #103]. The filing of a motion to alter or amend the judgment under Rule 9023, which makes Fed. R. Civ. P. 59 applicable to bankruptcy proceedings, tolls the time to file an appeal. Fed. R. Bankr. P. 8002(b)(1)(B). The filing of a motion for relief under Rule 9024, which makes Fed. R. Civ. P. 60 applicable to bankruptcy proceedings, tolls the time file to an appeal if the motions is filed within fourteen days after the judgment is entered. Fed. R. Bankr. P. 8002(b)(1)(D). Accordingly, these motions appear to be the types of motions that toll the time to file an appeal under Fed. R. Bankr. P. 8002(b)(1)-(2).

Because the notice of appeal was filed after the Conversion Order but before the court had an opportunity to rule on the two pending 'tolling' motions, the notice of appeal appears to prevent the appellate court from having jurisdiction until this court disposes of the pending tolling motions. *Knapp v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 2021 WL 879120 at *1, 2021 U.S. Dist. LEXIS 45864 at **2-3 (M.D. Tenn. Feb. 10, 2021)(Sixth Circuit held plaintiff's appeal in abeyance until after the district court ruled on any pending motions identified under Fed. R. App. P. 4(a)(4)). Thus, after ruling on the pending tolling motions, the notice becomes effective and jurisdiction transfers to the appellate court. *See,* 21 Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 3950.5 (4th ed.)(discussing Fed. R. App. P. 4(a)(2) and notice of appeals filed prematurely); 13A Cyclopedia of Federal Procedure §60:35 (3d ed.)("When a notice of appeal is filed after a judgment but before a district court has had an opportunity to rule on a pending tolling motion, the notice of appeal lies dormant until the trial court disposes of the pending motion; upon such disposition, the notice becomes effective.").

For these reasons, the court will rule on each of the submitted Motions.

## FACTS

CPARC is an Ohio corporation. [Doc. #69-1, p. 5].   CPARC's President, Chief Executive Officer, and sole shareholder is Mr. Rucci. [Doc. #59; Doc. #69-1 at pp. 5 & 14].   Mr. Rucci, who filed the bankruptcy Petition, Schedules, and Statement of Financial Affairs, is an attorney.

At the time of filing the "Subchapter V" Chapter 11 case on January 30, 2022, Pender Capital Asset Based Lending Fund I, L.P. ("Pender") had sought an eviction that was scheduled for January 31, 2022, CPARC's certification and/or license to provide services had been revoked, CPARC was not operating and had no employees, and the United States of America, by its attorneys, Bridget M. Brennan, United States Attorney for the Northern District of Ohio, Henry F. DeBaggis and James L. Morford, Assistant United States Attorneys, had filed a "Complaint in Forfeiture" alleging certain funds and/or monies were seized pursuant to the execution of a federal seizure warrant and were subject to forfeiture.

James A. Vitullo was substituted as attorney for CPARC on February 1, 2022.   CPARC's "Schedule A/B: Assets – Real and Personal Property" Part 3, Line 11, listed approximately \$86,000.00 in accounts receivables.[2] [Doc. #1-3, p. 2].

---

2/   At the section 341 meeting of creditors, Mr. Sebastian Rucci, as CPARC's principal, testified CPARC had about \$200,000.00 in accounts receivables. [Doc. #69-1, p. 40:9-15].   After the United States Trustee questioned the information on Schedule A/B, Part 3, Line 11, Mr. Rucci stated that CPARC still had more claims than it could ask for, which is why "[he] upped it about a hundred thousand." [*Id.*, p. 40:22-41:1].   CPARC and Mr. Rucci's "Omnibus Reply to UST's and Pender's Response and Opposition to Post-Judgement Motions" also states it has accounts

CPARC's bankruptcy petition follows two previous Chapter 11 cases filed by California Palms, LLC ("California Palms"): *In re California Palms, LLC*, Case No. 19-40267, filed on February 27, 2019 ("First Bankruptcy Case"), and *In re California Palms LLC*, Case No. 19-42174, filed on November 29, 2019 ("Second Bankruptcy Case"). The First and Second Bankruptcy Cases were mainly filed in response to collection efforts by Pender, a secured creditor in California Palms' First and Second Bankruptcy Cases. In two separate adversary[3] proceedings filed against Pender in the First and Second Bankruptcy Cases, CPARC was listed as a co-plaintiff with California Palms. This court's Memorandum Decision and Order re: Motion to Dismiss, *In re California Palms, LLC*, 2020 WL 728788, 2020 Bankr. LEXIS 77 (Bankr. N.D. Ohio Jan. 14, 2020), detailed both the history of the litigation with Pender and the First and Second Bankruptcy Cases.

On February 10, 2022, the United States Trustee ("UST") conducted an Initial Debtor Interview, in which Mr. Rucci, as CPARC's principal, informed the UST that CPARC had deposited prepetition funds into a Peoples Bank account ("Peoples Bank Account") of a non-debtor third-party entity to pay CPARC's expenses. [Doc. #35, p. 5 n.1]. The Peoples Bank Account was not listed in CPARC's Schedules.

On February 12, 2022, CPARC filed an application for the entry of an order authorizing the employment and retention of the Law Office of James Vitullo and Mr. James Vitullo as counsel for CPARC. [Doc. #29].

On February 18, 2022, the UST moved to convert this case to a Chapter 7 case ("Motion

---

receivables of about $200,000.00. [Doc. #132, p. 9].

3/ The Adversary Cases that CPARC was a party to were styled: *California Palms, LLC, et al. v. Pender Capital Asset Based Lending Fund I, LP*, Adv. Pro. 19-04010, filed on March 11, 2019, and *California Palms, LLC, et al. v. Pender Capital Asset Based Lending Fund I, LP*, Adv. Pro. 19-04040, filed on December 2, 2019.

4

to Convert") alleging "cause" under §1112(b)(4): (A) a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, and (B) gross mismanagement of the estate. [Doc. #35].   The UST's Motion to Convert relied on several factors, including CPARC's failure to open a debtor-in-possession account ("Debtor-In-Possession Account" or "DIP Account") and instead using the Peoples Bank Account. [*Id.*, p. 7].   CPARC's deadline to object to the Motion to Convert was on or about March 4, 2022.   CPARC did not file a timely objection.

On February 28, 2022, the UST and Pender each filed timely objections to the application to employ Mr. James Vitullo as attorney for CPARC. [Docs. ##54, 57].

On March 10, 2022, the UST held the section 341 meeting of creditors ("341 Meeting") where Mr. Rucci, as CPARC's principal, testified about CPARC's financial affairs under penalty of perjury. [Doc. #69-1].   At the 341 Meeting, CPARC testified it had made no attempt to open a Debtor-In-Possession Account until two or three weeks after the petition for relief was filed. [*Id.*, p. 54:2-11].   CPARC also testified that the Peoples Bank Account was opened and controlled by a third-party entity. [*Id.*, p. 47:24-48:14].   CPARC further testified CPARC had no signatory authority, and the funds in the Peoples Bank Account were potentially commingled with non-debtor funds. [*Id.*, p. 48:16-49:20].

At the 341 Meeting, Mr. Rucci also testified about his effort to reclaim the funds seized by the United States in the district court litigation before United States District Judge, the Honorable John R. Adams ("Judge Adams). [Doc. #69-1, p. 7:18-8-12].   He testified about the forfeiture of CPARC's funds, the events prompting the forfeiture, and the goal of getting the seized funds back. [*Id.*, pp. 8:21-12:11].

In concluding the 341 Meeting, the UST requested from CPARC "copies of bank

statements and check registers for all of 2021 through January 31st of 2022, that the Debtor has used or were open and now closed, any bank accounts the Debtor has used." [*Id.*, pp. 76:24-77:2].

On March 14, 2022, the UST submitted the transcript of the 341 Meeting conducted on March 10, 2022, in support of the Motion to Convert. [Doc. #69-1].

On March 15, 2022, this court held a hearing on, among other matters, the Motion to Convert and a hearing on the application to employ Mr. James Vitullo as attorney for CPARC. At the hearing, the court echoed the UST's concerns about CPARC's lack of income (as a nonoperating entity) and stated that the case presented a "melting ice cube" with the ultimate end potentially being termination of the Chapter 11 case, either by dismissal or conversion.

At the March 15th hearing, Mr. Rucci described to the court that on October 7, 2021, the United States had seized approximately $600,000.00 pursuant to the execution of a federal seizure warrant, which removed these funds from CPARC's bank accounts. Mr. Rucci had filed an action in district court with Judge Adams to have the seized funds returned and explained his strategy in doing so.[4] Mr. Rucci stated his expectation that the seized funds would be returned. For example, Mr. Rucci informed the court he had requested an order in the district court to exceed the page limitation to put four briefs in front of Judge Adams. [Doc. #118, p. 4:11-5:1]. Attached to Mr. Rucci's request to exceed the page limitation in the district court was evidence that would, according to Mr. Rucci, allow CPARC to prevail in the action to have the seized funds returned. [*Id.*, p. 5:1-8].

Mr. Rucci stated that with this evidence, which Mr. Rucci emphasized was very favorable, he believed it was "certain" that Judge Adams would give Mr. Rucci a hearing in about three to four weeks. [*Id.*, pp. 5:1-17, 24:12-13]. Mr. Rucci explained that a hearing would ultimately

---

4/ *See, California Palms Addiction Recovery Campus, Inc., et al. v. United States*, N.D. Ohio, Case No. 4:21-cv-02188-JRA.

allow the action to move forward for the return of the seized funds. [*Id.*, p. 23:10-24:20].

At the conclusion of the March 15th hearing, this court directed CPARC to provide a post-petition accounting of the funds in the "DIP Account" and in the Peoples Bank Account. The court specifically stated that by accounting, it court was referring to "bank records." [*Id.*, p. 31:15-23]. *See also* [*Id.*, p. 28:12-17]("we also need some accounting of what the heck happened to the funds from the date of filing until now. And I'm talking about, you know, bank accounts, et cetera, being provided to the Trustee and the Office of the U.S. Trustee, you know, so that they can understand what happened here."). This court asked Mr. Rucci if CPARC could provide the UST with this information within fourteen days. Mr. Rucci replied that he could. This court also stated that it would take very little for the court to find that the case needed to be converted to Chapter 7.

At the March 15th hearing, the UST also argued in favor of its February 28th Objection to the employment of Mr. James Vitullo because he was not "disinterested," based on his relationship with CPARC's equity security holder, Mr. Rucci. The court provided Mr. Vitullo the opportunity to supplement his application with a more detailed description of prior representations before the court ruled on his application to be employed as counsel for CPARC. The court gave Mr. Vitullo fourteen days to file this more detailed description in support of his application to be employed as counsel.

On March 16, 2022, this court entered an order ("March 16th Order") for CPARC to provide the UST with an accounting of all post-petition bank transactions, including all deposits, withdrawals, or other transfers by March 30, 2022. This court further ordered that if CPARC did not comply with the order, the UST could file an affidavit informing the court of CPARC's violation. The filing of the affidavit would make the Motion to Convert decisional without further

hearing.

On March 31, 2022, the UST filed the *Declaration of John Weaver Informing the Court of the Debtor-in-Possession's Failure to Comply with the Court's Order* ("Weaver Declaration"). [Doc. #80]. The Weaver Declaration asserted that CPARC did not comply with the March 16th Order. The Weaver Declaration stated CPARC provided documentation that CPARC opened a DIP Account. CPARC also provided an accounting of the transactions in the DIP Account from the period of February 23, 2022 through March 25, 2022. The only activity reflected in the information provided regarding the DIP Account were two deposits. The Weaver Declaration further stated CPARC did not provide an accounting of any post-petition bank transactions, including deposits, withdrawals, or other transfers, for the Peoples Bank Account in which CPARC had maintained funds before opening the DIP Account. The Weaver Declaration further stated CPARC had not filed monthly operating reports for January or February.

At the 341 Meeting, and at the March 15th hearing, Mr. Rucci described in some detail the district court litigation upon which CPARC's reorganization hopes rested. *See e.g.*, [Doc. #69-1, pp. 8:21-12:11, 21:22-24:22 & 37:25-38:7; Doc. #118, pp. 4:22-5:17, 23:10-24:20]. At the time of filing, CPARC had no income because its license and/or certification to provide varying levels of residential services to residents dealing with substance use disorders had been revoked. Based upon that revocation[5] approximately $600,000.00 had been removed from CPARC's bank account pursuant to the execution of a federal seizure warrant. Mr. Rucci explained his action seeking the return of the funds, contending they were unlawfully seized, which in turn prompted the United States to file the civil forfeiture complaint.[6]

---

5/ Mr. Rucci asserted that improper revocation of CPARC's license(s) had resulted in the improper seizure of CPARC's bank accounts.

6/ *See, United States v. $582,932 in Funds Seized on October 7, 2021, from Farmers Nat'l Bank Account No.*

Without reversal of the seized funds held by the United States, and then the reinstatement of CPARC's license, it appeared that the debtor-in-possession would face potentially insurmountable obstacles proposing a confirmable Chapter 11 Plan.

On March 29, 2022, the district court stayed the seized-funds litigation. Thus, the Hearing on the return of the funds, upon which Mr. Rucci had placed so much emphasis, was not conducted. This result was not what Mr. Rucci had hoped for. Rather than taking immediate action to take evidence regarding the release of approximately $600,000.00 being held by the United States, the district court stayed the case and held that the United States could pursue an investigation and report to the district court every forty-five days. The district court stayed the case, in part, because the forfeiture sought could be litigated as part of a criminal case if any criminal proceedings were commenced.

On March 31, 2022, after the UST filed the Weaver Declaration and this court issued the Order to Show Cause, Mr. Rucci sent the UST a spreadsheet of post-petition and pre-petition transactions in the Peoples Bank Account. The spreadsheet was not supported by bank statements or bank records, and the UST asserted that it appeared to have been redacted in parts.

The March 16th Order had stated that the UST's Motion to Convert would be decisional if the UST filed an affidavit of noncompliance. There was no requirement that the court hold any additional hearing(s). [Doc. #76, p. 2]. However, because Mr. Rucci had emphasized that the successful recovery of seized funds in the district court litigation was the key to a successful reorganization, the matter was set for Hearing so that what appeared (from the district court docket) to be a setback, could be confirmed or negated. Accordingly, the court issued the March 31, 2022 *Order for Show Cause Hearing* ("Order to Show Cause").

---

*XXXX9874, et al.*, N.D. Ohio Case No. 4:22- cv-00057-BYP.

On April 3, 2022, Mr. James Vitullo filed a *Motion to Withdraw as Attorney*. [Doc. #83]. In this Motion, Mr. James Vitullo stated he could not overcome the UST's objections to the application to be employed as attorney for CPARC.

On April 5, 2022, CPARC's principal, Mr. Rucci, filed a written objection to the Motion to Convert as an interested party. [Doc. #85].

On April 5, 2022, this court held a hearing on the Motion to Convert, this court's Order to Show Cause, and the Motion to Withdraw as Counsel. The court first considered Mr. James Vitullo's Motion to Withdraw as Counsel. At the hearing, no objection was made by any party to the motion to withdraw. The court specifically asked Mr. Rucci if there was any objection to Attorney Vitullo's motion to withdraw. Mr. Rucci did not object. The court then granted the motion to withdraw.

The court then considered CPARC's violation of the March 16th Order. At the hearing, the UST reiterated that CPARC did not provide a timely accounting that satisfied the March 16th Order and further stated that the spreadsheet of information provided had raised more questions than it answered. For example, the UST informed the court the spreadsheet appeared to include personal transactions.

The court also asked Mr. Rucci about the district court litigation being stayed pending the resolution of an investigation. Mr. Rucci informed the court the stay was only for forty-five days,[7] and that nothing would result from the criminal investigation. [Doc. #116, pp. 9:14-12:22]. As a consequence of the district court's stay, Mr. Rucci lost the ability to force a hearing on the return of the seized funds. Mr. Rucci downplayed this litigation setback by explaining that this was common in the forfeiture field.

---

[7] This does not appear to have been correct. There was only a requirement to provide a status report to the court every forty-five days.

22-40065-jpg    Doc 149    FILED 06/10/22    ENTERED 06/10/22 17:06:23    Page 10 of 50

Mr. Rucci then talked about his litigation strategy for getting back the seized funds. For example, Mr. Rucci talked about possibly bringing in another attorney who may have better connections with the AUSAs. [Doc. #116, p. 9:5-8]. Alternatively, Mr. Rucci suggested the possibility of filing yet another motion in the district court with a different judge in order to obtain a hearing and present evidence.[8] [*Id.*, p. 12:15-20]. Mr. Rucci asserted that there were about ten jurisdictional issues that would allow Mr. Rucci to prevail in getting the seized funds back. [*Id.*, pp. 9:23-10:11]. Mr. Rucci then described the possibility of filing a mandamus action with the Sixth Circuit, which according to Mr. Rucci would take about a month, in order to present these jurisdictional issues and finally force an evidentiary hearing on having the seized funds returned. [*Id.*, pp. 10:21-12:22].

At the April 5th hearing, Subchapter V Trustee Frederic P. Schwieg raised the idea of paying creditors in the context of a discussion about a hypothetical dismissal of the case, but acknowledged the inability to pay creditors because CPARC did not account for Pender's unliquidated claim in CPARC's Schedules. [*Id.*, pp. 21:16-22:14]. In response to a question from the court, Trustee Schwieg stated he was unaware of any statutory mechanism to distribute cash outside of a Chapter 11 Plan. [*Id.*, p. 23:1-3]. As part of the discussion, the UST objected to any concept that would pay just listed creditors and dismiss the case given that there were unscheduled and unliquidated claims, which might result in payment to some creditors, but not others, in

---

8/ It should be noted that at the April 5th hearing, when Mr. Rucci discussed the alternative of filing apparently a new action in the district court that would result in the return of the seized funds, he pointed to an example of such a motion attached as an exhibit to his memoranda opposing conversion. Attached as Exhibit G to Mr. Rucci's opposition is an order dismissing certain motions for the return of seized property. [Doc. #85-7, pp. 1-4]. Turning to the litigation with Judge Adams in the district court, *United States v. $582,932 in Funds Seized on October 7, 2021, from Farmers Nat'l Bank Account No. XXXX9874, et al.*, N.D. Ohio Case No. 4:22- cv-00057-BYP, the United States stated that CPARC and Mr. Rucci had filed prior motions in four actions, (Nos. 4:21MJ6234 through 4:21MJ6283), for the return of the seized property that the "district court squarely dismissed on November 10, 2021." [4:22- cv-00057-BYP, Doc. #8, p. 3]. The order Mr. Rucci attached as Exhibit G includes Case Nos. 4:21MJ6234 through 4:21MJ6283 and these appear to be the actions the United States asserted the district court had previously dismissed. [Doc. #85-7, p. 1].

violation of the Bankruptcy Code's priority scheme.

Mr. Rucci followed up on Trustee Schwieg's comments and told the court that he could be entrusted to pay listed non-insider creditors and then dismiss the case. This court then gave its oral ruling converting the Chapter 11 case to Chapter 7 based upon the lack of an ability to rehabilitate in a reasonable amount of time, failure to comply with a court order, and concerns about CPARC's management and the adequacy of disclosures from the inception of the case.

On April 5, 2022, this court entered the Conversion Order. [Doc. #88].

On April 13, 2022, CPARC and Mr. Rucci filed a *Motion to Alter or Amend a Judgment*. [Doc. #101].

On April 18, 2022, CPARC and Mr. Rucci filed a *Motion for Stay of Bankruptcy Court Order [Docket #94] Pending Appeal* ("Motion for Stay"). [Doc. #102].

On April 19, 2022, CPARC and Mr. Rucci filed a *Motion for Relief from Judgment*. [Doc. #103].

On April 19, 2022, CPARC and Mr. Rucci filed a notice of appeal. [Doc. #104].

On April 21, 2022, CPARC and Mr. Rucci filed a *Motion to Suspend Chapter 7 Proceedings Pending Resolution of Post-Judgment Motions*. [Doc. #112].

On April 26, 2022, this court granted the *Motion of the United States Trustee to Extend Time Until May 5, 2022, to File Response to Post Judgment Motions*. [Doc. #119].

On April 27, 2022, Pender filed an *Objection to the Motion of Sebastian Rucci and the Debtor to Alter or Amend the Court's Order Converting the Case.* [Doc. #121].

On May 2, 2022, Pender filed an *Objection to the Motion of Sebastian Rucci and the Debtor for a Stay of Bankruptcy Court Order [Doc. #94] Pending Appeal*. [Doc. #126].

On May 3, 2022, Pender filed an *Objection to the Motion of Sebastian Rucci and the Debtor*

*for Relief from This Court's Order Converting the Case to Chapter 7*. [Doc. #127].

On May 5, 2022, Pender filed an *Objection to the Motion of Sebastian Rucci and the Debtor to Suspend Chapter 7 Proceedings Pending Resolution of Post-Judgment Motions*. [Doc. #128].

On May 5, 2022, the UST filed an *Objection to Debtor's Motion to Stay Bankruptcy Court Order [Doc #94] Pending Appeal*. [Doc. #129].

On May 5, 2022, UST filed an *Omnibus Objection of The United States Trustee to Post Judgment Motions.* [Doc. #130].

On May 12, 2022, CPARC and Mr. Rucci filed an *Omnibus Reply to UST's and Pender's Response and Opposition to Post-Judgment Motions [Doc. #126-130 and #121]*. [Doc. #132].

## LAW

"When a debtor files a bankruptcy petition, he chooses the forum to deal with his creditors and brings them into the bankruptcy arena, willingly or not." *Asbury v. Alliant Bank* (*In re Asbury*), 423 B.R. 525, 529 (B.A.P. 8th Cir. 2010). The filing of a petition under Chapter 11 has consequences, implicating both the legal rights and responsibilities of the debtor. This court's decision to convert the Chapter 11 case to a case under Chapter 7 was one of the possible statutory consequences of filing a petition for relief under Chapter 11 of the Bankruptcy Code.

On request of a party in interest, and after notice and a hearing, a court shall convert or dismiss a case for "cause," whichever is in the best interest of creditors and the estate. 11 U.S.C. §1112(b)(1). Here, this court found "cause" for conversion of this case from Chapter 11 to a Chapter 7 proceeding because it was in the best interest of creditors and the estate. CPARC and Mr. Rucci subsequently filed the four motions at issue. The court considers each motion in turn.

### I.  Motion to Alter or Amend Judgment.

CPARC and Mr. Rucci's Motion to Alter or Amend the Conversion Order is brought under Fed. R. Bankr. P. 9023, which makes Fed. R. Civ. P. 59 applicable to bankruptcy proceedings.

22-40065-jpg    Doc 149    FILED 06/10/22    ENTERED 06/10/22 17:06:23    Page 13 of 50

Under Rule 59(e), a party can move to alter or amend a judgment. Rule 59(e)allows a court to "rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 450, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). The moving party "may offer any of four reasons for the alteration or amendment: (1) there was 'a clear error of law' in the judgment, (2) the movant has 'newly discovered evidence,' (3) there has been an 'intervening change in controlling law,' or (4) the alteration or amendment is needed 'to prevent manifest injustice.'" *Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 833 (6th Cir. 2019)(citation omitted); *see also, Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). "The grant or denial of a Rule 59(e) motion is within the informed discretion of the court." *Hammerly v. Fifth Third Mortg. Co.* (*In re J & M Salupo Dev. Co.*), 388 B.R. 795, 805 (B.A.P. 6th Cir. 2008). A Rule 59(e) motion is an "extraordinary remedy and should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *Id.* (quoting *Am. Textile Mfrs. Institute, Inc. v. The Ltd., Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1998)). A Rule 59(e) motion is not intended as a vehicle to relitigate matters previously considered. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485-486 n.5, 128 S.Ct. 2605, 171 L. Ed. 2d 570 (2008); *In re J & M Salupo Dev. Co.*, 388 B.R. at 805. "The burden of demonstrating the existence of a manifest error of fact or law rests with the party seeking reconsideration." *In re J & M Salupo Dev. Co.*, 388 B.R. at 805.

CPARC and Mr. Rucci base their Motion to Alter or Amend on the first ground, that there was "a clear error of law" in the judgment, and the last ground, the alteration or amendment is needed "to prevent manifest injustice."

### A. "Clear Error of Law."

Starting with the first ground, a Rule 59(e) motion "requires that the moving party show that matters or controlling decisions were overlooked that might have materially affected the

earlier ruling," *Int'l Union United v. Bunting Bearings Corp.* (*In re Bunting Bearings Corp.*), 321 B.R. 420, 422 (Bankr. N.D. Ohio 2004), and "presents manifest evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law." *Turner v. City of Toledo*, 671 F. Supp. 2d 967, 969 (N.D. Ohio 2009)(quoting *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003)).

A fair reading of CPARC's Motion to Alter or Amend submitted to the court shows that CPARC argues that pre-petition expenses and deposits cannot constitute gross mismanagement of the estate, which renders any pre-petition mismanagement irrelevant. [Doc. #101, p. 6]. CPARC then argues that CPARC did not make any post-petition deposits in the Peoples Bank Account. Therefore, CPARC asserts there cannot be gross mismanagement of the estate. *In re Unique Tool & Mfg. Co., Inc.*, 2019 WL 5589085 at *11, 2019 Bankr. LEXIS 3365 at *32 (Bankr. N.D. Ohio Oct. 25, 2019).[9]   This court, however, did not find "cause," under §1112(b)(4)(B), based on post-petition deposits into the Peoples Bank Account.   Instead, this court found "cause," in part, based on CPARC's failure to open the DIP Account for an extended period, failure to provide the UST with statutorily required and requested information, continuing losses because of a lack of any income, and the fact that any plan would not be filed and confirmed within a reasonable period of time.   CPARC's Motion to Alter or Amend thus fails to meet its burden in presenting controlling authority the court overlooked that might have materially affected its determination that "cause" existed.

CPARC also argues that the Conversion Order lacks written findings and conclusions of law. [Doc. #101, p. 12].   Under Fed. R. Civ. P. 52(a), made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7052, a bankruptcy court must state its factual findings to aid the appellate

---

9/   The Motion for Stay makes this same argument in support of its likelihood of success on appeal. [Doc. #102, pp. 3-4].

15

court in understanding the basis for its decision. *Hardin v. Caldwell,* 851 F.2d 852, 857 (6th Cir. 1988); *Hines v. Scottsboro Inv. Grp.*, 2014 WL 6886717 at *2, 2014 U.S. Dist. LEXIS 168403 at *5 (N.D. Ala. Dec. 5, 2014).   Those findings do not have to be written. *Hawkins v. Ohio Bell Tel. Co.*, 93 F.R.D. 547, 553 (S.D. Ohio 1982)(citing *Moviable Offshore, Inc. v. M/V Wilken A. Falgout*, 471 F.2d 268, 269-270 (5th Cir. 1973); *Makah Indian Tribe v. Moore*, 93 F. Supp. 105 (W.D. Wash. 1950); 5A Moore's Federal Practice, ¶52.06(1) at 2706 (2d ed. 1981)).   Therefore, the lack of written findings and conclusions of law is not a basis for amending or altering the Conversion Order.

CPARC then argues that the record does not support conversion.   If a party's Rule 59(e) motion "merely quibbles with the Court's decision, the proper recourse is not a motion for reconsideration but instead an appeal." *Zell v. Klingelhafer*, 2018 WL 334386 at *5, 2018 U.S. Dist. LEXIS 2690 at *13 (S.D. Ohio Jan. 8, 2018), *aff'd*, 751 F. App'x 641 (6th Cir. 2018).   Here, CPARC's argument that the record does not support conversion is not a question for this court to decide under Rule 59(e).   Instead, that is a question for an appellate court.

Accordingly, CPARC and Mr. Rucci have failed to meet their burden of demonstrating the existence of "a clear error of law."

### B.  "Manifest Injustice."

The second ground CPARC relies on is that alteration or amendment is needed to prevent "manifest injustice."   Courts determine whether "manifest injustice" exists on a case-by-case basis. *Int'l Union United v. Bunting Bearings Corp.* (*In re Bunting Bearings Corp.*), 321 B.R. 420, 423 (Bankr. N.D. Ohio 2004).   The Sixth Circuit Bankruptcy Appellate Panel has endorsed certain guidelines to be used in determining whether the party seeking reconsideration has shown "manifest injustice." *Cusano v. Klein* (*In re Cusano*), 431 B.R. 726, 734 (B.A.P. 6th Cir. 2010). The movant must show an error in the trial court that is direct, obvious, and observable. *Id.*   The

movant must also be able to demonstrate that the underlying judgment caused them some type of serious injustice, which could be avoided if the judgment were reconsidered. *Id.* In other words, as succinctly summarized in *In re Bunting Bearings Corp.*: "What is clear from case law, and from a natural reading of the term itself, is that a showing of manifest injustice requires that there exist[s] a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *In re Bunting Bearings Corp.*, 321 B.R. at 423.

The Conversion Order does have consequences that are adverse to the goal of rehabilitating CPARC. However, CPARC and Mr. Rucci have not shown that this court's order converting the case is based upon a fundamental flaw in the court's reasoning, and converting the case is not contrary to applicable policy. CPARC's arguments that the UST's Motion to Convert lacked documentary support, that the UST raised new issues at the Show Cause Hearing, and that the UST allegedly objected to paying creditors in full, which are asserted to constitute "unusual circumstances,"[10] do not justify amending or altering the order converting this case.[11]

First, the UST established "cause," including CPARC's lack of income and failure to provide necessary documentation. Second, CPARC had ample time to address the Motion to Convert, and the argument that the UST raised new issues at the Show Cause Hearing lacks merit. CPARC and Mr. Rucci were on notice that the UST had moved to convert the case for "cause." CPARC cannot claim that the UST raised new issues at the Show Cause Hearing based on its own failure to comply with this court's March 16th Order. Third, the UST opposed the concept of

---

10/ The Motion for Stay also makes these arguments in support of its likelihood of success on appeal, namely, that the UST raised new issues at the Show Cause Hearing and that the UST objected to paying creditors in full. [Doc. #102, pp. 5-6, 7-9].

11/ CPARC also argues that it will be unable to pursue its action for the license revocation or its action to return certain funds seized. This court considered this factor in making its decision.

paying only listed creditors "in full" since that would not comply with the Bankruptcy Code's priority scheme in regard to unlisted creditors, and the court considered the concept of "paying creditors in full" at the April 5th hearing.   Thus, the court considered these factors in making its decision.   Therefore, CPARC and Mr. Rucci have not met their burden of showing that there was a fundamental flaw in the court's reasoning that, without correction, would lead to a result that is both inequitable and not in line with applicable policy, which would establish "manifest injustice."

In short, none of the aforementioned grounds under Rule 59 have been satisfied.   "A motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).   Thus, the Motion to Alter or Amend is denied.

## II.   <u>Stay Pending Appeal.</u>

CPARC and Mr. Rucci's Motion for Stay is governed by Fed. R. Bank. P. 8007.   Rule 8007(a)(1)(A) allows a party to move for "a stay of a judgment, order, or decree of the bankruptcy court pending appeal."

The factors that courts must apply in determining whether to grant a motion for a stay pending appeal were detailed in *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).   In *Griepentrog*, the Sixth Circuit held, in relevant part:

> In determining whether a stay should be granted under Fed. R. Civ. P. 8(a), we consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction. These well-known factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

This court must balance these four interrelated factors in considering whether to grant or deny a stay pending appeal. *Id.*; *SawariMedia, LLC v. Whitmer*, 963 F.3d 595, 596 (6th Cir. 2020).

But a stay cannot be granted "where the movant presents no likelihood of merits success." *SawariMedia*, 963 F.3d at 596 (quoting *Daunt v. Benson*, 956 F.3d 396, 421-22 (6th Cir. 2020)). *Accord Luxshare, Ltd. v. ZF Auto. US, Inc.*, 15 F.4th 780, 783 (6th Cir. 2021)(quoting *Griepentrog*, 845 at 153-54). The first two factors "are the most critical." *Luxshare*, 15 F.4th at 783 (quoting *Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009)).

The moving party bears the burden of establishing by a preponderance of the evidence its entitlement to a stay. *Miller v. Sullivan* (*In re Wylie*), 635 B.R. 291, 296 (Bankr. E.D. Mich. 2021). The "movant must address each factor, regardless of its relative strength, providing specific facts and affidavits[12] supporting assertions that these factors exist." *Griepentrog*, 945 F.2d at 154 ("This, in turn, develops an adequate record from which we can determine the merits of the motion."). The decision to grant or deny a stay pending appeal is highly discretionary. *In re Wylie*, 635 B.R. at 296.

The court finds that CPARC and Mr. Rucci have not satisfied their burden of establishing by a preponderance of the evidence that they are entitled to a stay. Accordingly, the Motion for Stay must be denied based on the *Griepentrog* factors, as discussed below.

### A. First Factor: "The Likelihood That the Party Seeking the Stay Will Prevail on the Merits of the Appeal."

Starting with the first factor, which is analyzed at length because CPARC's Motion for Stay makes multiple arguments on its likelihood of success on the merits of its appeal. Ultimately, the court finds CPARC is not likely to succeed on the merits of its appeal. This court is not infallible, and the reviewing court will be the judge of whether to reverse or modify this court's order on appeal. But it appears CPARC is unlikely to succeed on the merits of its appeal for the reasons below.

---

12/ The Motion for Stay did not attach any supporting affidavits.

1. <u>"Cause."</u>

On request of a party of interest, a court "shall" convert or dismiss a Chapter 11 case, whichever is in the best interests of creditors and the estate, for "cause." §1112(b)(1). Whether "cause" exists turns on a "case-specific factual inquiry which focuses on the circumstances of each debtor." *In re Cal. Palms, LLC*, 2020 WL 728788 at *5, 2020 Bankr. LEXIS 77 at *14 (quoting *In re Creekside Senior Apts., L.P.*, 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013)(citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 808 F.2d 363, 371-72 (5th Cir. 1987)(en banc), *aff'd*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D. Tenn. 1992))); *In re Four Wells Ltd.*, 2016 WL 1445393 at *9, 2016 Bankr. LEXIS 1673 at *30 (B.A.P. 6th Cir. Apr. 12, 2016)(citing the same).

Although §1112(b)(4) enumerates examples of "cause," that list is neither exclusive nor exhaustive. Accordingly, a court may find "cause" based on other factors not enumerated by §1112(b)(4). *See,* 11 U.S.C. §102(3)("[i]n this title 'includes' and 'including' are not limiting"); *Fishell v. U.S. Tr.*, 19 F.3d 18, at *3 (6th Cir. 1994)(unpublished)("Cause for dismissal is not limited to the specifically enumerated examples set out in section 1112 but is rather within the sound discretion of the bankruptcy court." (quoting *In re Kvamme*, 93 B.R. 698, 700 (Bankr. D.N.D. 1988))); *Milford Conn. Assocs., L.P. v. Adams* (*In re Milford Conn. Assocs., L.P.*), 404 B.R. 699, 707 (D. Conn. 2009); *Casse v. Key Bank Nat'l Ass'n* (*In re Casse*), 198 F.3d 327, 334-35 (2d Cir. 1995).

In other words, determining "cause" is a fact-specific, flexible determination, that must be made on a case-by-case basis by looking at the totality of the circumstances. *See, In re Cal. Palms, LLC*, 2020 WL 728788 at *6, 2020 Bankr. LEXIS 77 at *16. The fact that the UST based its Motion to Convert on two of the enumerated grounds in the statute, §§1112(b)(4)(A)-(B), is not

dispositive. *Cf. Serron Invs., Inc. v. Pacifica L22* (*In re Serron Invs., Inc.*), 2012 WL 2086501 at

*6, 2012 Bankr. LEXIS 2625 at *12 (B.A.P. 9th Cir. June 8, 2012)("It is of no moment that there

was no current motion from the UST to dismiss the case.   The Panel long ago recognized that a

bankruptcy court has the authority, *sua sponte*, to dismiss a bankruptcy case for cause." (emphasis

in original)).   During the pendency of the case, additional facts were raised supporting a finding

of "cause."[13]   Thus, to the extent CPARC and Mr. Rucci's argument asserts that this court erred

by not evaluating the considerations under §1112(b)(4), this argument is unlikely to succeed on

appeal.

     CPARC and Mr. Rucci assert that the UST's Motion to Convert, filed eighteen days after

the filing of the petition for relief, was filed prematurely.[14]   However, early and ongoing judicial

management of Chapter 11 cases, including addressing matters at the outset of the case, is essential

if the Chapter 11 process is to survive and if the goals of reorganization on the one hand, and

creditor protection on the other, are to be achieved. *See, In re Timbers of Inwood Forest Assocs.,*

*Ltd.*, 808 F.2d at 373-74; *In re Johnston*, 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992)("[W]here there

is no reasonable possibility of an effective reorganization, the bankruptcy court is not compelled

to wait a certain period of time, to the detriment of creditors, before ordering conversion of the

case."). *See also, Tenn. Publ'g Co. v. Am. Nat'l Bank*, 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed.

---

13/   CPARC also asserts that the "hearing changes" ultimately changed the "cause" inquiry and violated CPARC's due process rights because the UST's Motion to Convert was not amended to include why there were concerns with CPARC's management of funds.   CPARC made similar arguments in its Motion to Alter or Amend a Judgment. [Doc. #101, p. 12].   To prevail on a procedural due process claim, prejudice must be shown by showing that the outcome of the proceeding would have been different. *Haffey v. Crocker* (*In re Haffey*), 576 B.R. 540, 549 (B.A.P. 6th Cir. 2017).   CPARC was not deprived of due process rights by any alleged "surprise oral motion" or "hearing changes" related to the Peoples Bank Account.   As explained below, this court found "cause" based on a number of other factors.   CPARC has failed to show how the outcome of the proceedings would have been different but for the alleged "hearing changes."

14/   This same argument is made in the other post-judgment motions. *See e.g.*, [Doc. #101, p. 6, ¶24; Doc. #103, p. 6, ¶2.1].

13 (1936)("However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation.").  "The very purpose of §1112(b) is to cut short this plan and confirmation process where it is pointless." *Matter of Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994).  Thus, CPARC and Mr. Rucci's argument that the UST prematurely filed the Motion to Convert is unlikely to succeed on appeal.

A bankruptcy court's decision to convert or dismiss is entrusted to the bankruptcy court's discretion and is reviewed for an abuse of discretion, which weighs against the likelihood of success on appeal. *Mitan v. Duval* (*In re Mitan*), 573 F.3d 237, 247 (6th Cir. 2009).

It is undisputed that CPARC was not operating at the time of filing, that its licensing and/or certification had been revoked, that its funds had been seized, and that the debtor-in-possession had no income.  CPARC's "rehabilitation" was wholly dependent on succeeding in its litigation regarding the return of the monies held by the United States and reinstatement of its licensing and/or certification.

Mr. Rucci had provided testimony about the litigation, his strategy and expectations of success.  He asserted that he was going to be able to finally put his evidence in front of the district court and begin the string of legal victories that would lead to CPARC being able to operate again.

Unfortunately, the district court did not react to the arguments and evidence the way that Mr. Rucci had expected and predicted.  Instead of holding an immediate hearing on return of the funds subject to the civil forfeiture action, Judge Adams gave the United States time to continue its investigation, requiring only periodic reports on the status of the investigation and possible indictment.

Mr. Rucci acknowledged that the results in the district court were not what he had hoped.

He talked of possibly filing a mandamus action with the Sixth Circuit to force a hearing on his theories of why the civil forfeiture was improper. However, this court's delay in ruling on the UST's Motion to Convert had been based, in part, on allowing the debtor-in-possession some time to obtain a hearing, and a decision, in the district court that would allow CPARC to dig itself out of a non-operating, money losing hole. And instead, the bottom dropped out of the hole, leaving no clear path to a timely rehabilitation of CPARC's operations.

With these obstacles standing in the way of any potential reorganization, CPARC and Mr. Rucci sought dismissal as an alternative to the UST's request for conversion.

The UST however demonstrated, and this court found, "cause." The UST showed there was no ability to rehabilitate in a reasonable amount of time, established that the CPARC violated a court order, and demonstrated CPARC's mismanagement from the inception of the case. The UST carried its burden of proving "cause" by a preponderance of the evidence.

CPARC lacked a "reasonable likelihood of rehabilitation" within a reasonable time. Inherent in the concept of a "reasonable likelihood of rehabilitation" is that there must be a reasonable possibility of a successful reorganization within a reasonable time. *In re Creekside Sr. Apartments, L.P.*, 489 B.R. at 61-62 (citing *First Jersey Nat'l Bank v. Brown* (*In re Brown*), 951 F.2d 564, 572 (3d Cir. 1991)(quoting *Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. at 376)(analyzing "a reasonable possibility of a successful reorganization within a reasonable time" as a factor in "cause" under 11 U.S.C. §1112(b))). A debtor does not have a "reasonable likelihood of rehabilitation" if a debtor's reorganization lacks a reasonable possibility of coming to fruition within a reasonable time. *See, White v. McDermott* (*In re White*), 535 B.R. 749, 755-56 (E.D. Mich. 2015)(citing *In re Creekside Sr. Apartments, L.P.*, 489 B.R. at 61)); *Vincens v. Convenience Plus Partners, LLC* (*In re Vincens*), 287 F. App'x 686, 687 (10th Cir. July 25,

2008)(unpublished).

Here, any attempt at rehabilitation hinged on speculative litigation with uncertain dates of finality. At the April 5th hearing, it was confirmed that the district court litigation was stayed pending the outcome of an investigation. Commencing a new action or filing a mandamus action with the Sixth Circuit to force a hearing would be starting over. And, as the Sixth Circuit has noted, mandamus is an "extraordinary remedy." *In re United States*, 32 F.4th 584, 590 (6th Cir. 2022). Asking the Sixth Circuit for a writ of mandamus, or a similar litigation "Hail Mary", would not increase the likelihood of rehabilitation within a reasonable time, and would entail additional litigation costs.

Under comparable facts, courts have been unreceptive to reorganizations of this kind and have found "cause" when the likelihood of rehabilitation depends on ongoing speculative litigation.[15] *See, In re FRGR Managing Member LLC*, 419 B.R. 576, 582-83 (Bankr. S.D.N.Y. 2009); *In the Matter of Winshall Settlor's Tr.*, 758 F.2d 1136, 1137-38 (6th Cir. 1985)(discussing *In re Oak Winds*, 4 B.R. 528 (Bankr. M.D. Fla. 1980)).[16] CPARC's ability to reorganize largely

---

15/ CPARC and Mr. Rucci's post-judgment motions rely on *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233 (Bankr. S.D. Tex. 2021) and *In re Offer Space, LLC*, 629 B.R. 299 (Bankr. D. Utah 2021), for the proposition that a debtor's lack of operations and income does not warrant conversion. Reliance on *In re Port Arthur* and *In re Offer Space* is misplaced. At issue in *In re Port Arthur* and *In re Offer Space* was whether the debtor qualified as a "person engaged in commercial or business activities" entitling the entity to proceed as a Subchapter V debtor. *In re Port Arthur*, 629 B.R. at 236; *In re Offer Space*, 629 B.R. at 304. In these cases, the parties objected to the Subchapter V designation because the debtor had ceased business operations and was actively pursuing litigation and had filed a plan to liquidate all remaining assets and pay creditors. *In re Port Arthur*, 629 B.R. at 235-37; *In re Offer Space*, 629 B.R. at 304. The courts overruled the objections to debtor's designation as a Subchapter V debtor and held that, among other things, actively pursuing litigation or exploring counterclaims in a lawsuit was a commercial and business activity. *In re Port Arthur*, 629 B.R. at 239; *In re Offer Space*, 629 B.R. at 306, 311. However, the issue here is not whether CPARC could proceed as a Subchapter V debtor (indeed, CPARC has proceeded as a Subchapter V debtor and no party-in-interest objected to the designation). Rather, the issue here is whether "cause" was established warranting conversion or dismissal. As explained below, a non-operating debtor who files a case under Chapter 11 risks the possibility that a party-in-interest will force dismissal or conversion. *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (3d Cir. 2004).

16/ *Winshall* has been overturned to the extent that it held that an individual debtor cannot file under Chapter 11. *See, In re Charfoos*, 979 F.2d 390, 393 (6th Cir. 1992)(observing the Supreme Court's decision in *Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), overruled *Winshall* to the extent that it prohibited the filing of Chapter 11 cases by individuals); *In re FRGR Managing Member LLC*, 419 B.R. at 583 n.3 ("*Winshall*, however,

depended, as a necessary first step, on the outcome of the district court litigation to have its seized funds returned. The staying of that litigation was a blow to CPARC's likelihood of rehabilitation. This was a factor in the court's finding of "cause."

Another fact considered in the "cause" analysis is whether a nonindividual debtor has an ongoing operational business. *See In re FRGR*, 419 B.R. at 584; *In re Sakon*, 617 B.R. 7, 15 (Bankr. D. Conn. 2020). Debtors in Chapter 11 who have ceased business operations, such as non-operating debtors, will satisfy the "continuing loss" element in §1112(b)(4)(A) because non-operating debtors are inevitably going to face a negative cash flow. *See,* 7 Collier on Bankruptcy ¶1112.04[6][a][i] at 1112-33 (Richard Levin & Henry J. Sommer eds., 16th)(citing *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (3d Cir. 2004)); *see also, In re Mense*, 509 B.R. 269, 284 (Bankr. C.D. Cal. 2014)(citing *Loop*, 379 F.3d at 516). Because the purpose of §1112(b) is to preserve assets by preventing a debtor-in-possession from gambling on continuation of the enterprise at the expense of the estate and its creditors, §1112(b)(4)(A) provides "cause" exists for a debtor who has ceased business operations and that continue to accrue administrative expenses without corresponding income. *See, Loop*, 379 F.3d at 515-16 (holding that §1112(b)'s "continuing loss to or diminution of the estate" creates a *per se* rule establishing "cause" whenever a debtor has ceased business operations). For example, with non-operating debtors, any negative cash flow (e.g., administrative expenses) effectively comes straight from creditor's pockets. *Id.* Additionally, a debtor with no current income and whose prospects for future income are contingent and speculative will struggle to demonstrate the ability reorganize under Chapter 11. *In re Cal. Palms, LLC*, 2020 WL 728788 at *11, 2020 Bankr. LEXIS 77 at *29. CPARC had no ongoing business

---

remains good law for other purposes."), *See e.g.*, *C-TC 9th Ave. P'ship v. Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1308 (2d Cir. 1994)(citing *Winshall* with approval).

or employees, and as a result was facing a negative cash flow.[17]  Administrative expenses were not going to decrease if CPARC undertook to litigate a mandamus action, while at the same time seeking to engage new bankruptcy counsel.  These considerations weighed against finding that CPARC had a reasonable likelihood of rehabilitation.  These factors were part of the court's finding of "cause."

The UST also established that CPARC failed to comply with an order of the court.  The ability to seek protection under the Bankruptcy Code travels in tandem with the fundamental obligation to comply with court orders. *In re Unique Tool & Mfg. Co., Inc.*, 2019 WL 5589085 at *12, 2019 Bankr. LEXIS 3365 at *37 (quoting *In re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011)).  Accordingly, failure to comply with an order of the court constitutes "cause" for dismissal or conversion.  The failure to comply, however, need not be willful, or the product of bad faith or fraud, and the fact that a court order memorializes an obligation that arose by agreement is irrelevant. *Id.*  For this reason, failure to comply with a single court order may constitute "cause," *YBA Nineteen, LLC v. IndyMac Venture, LLC* (*In re YBA Nineteen, LLC*), 505 B.R. 289, 302 (S.D. Cal. 2014), but the "circumstances of lack of compliance may be taken into account by the court in determining whether to dismiss or convert the case." 7 Colliers on Bankruptcy, ¶1112.04[6][e] at 1112-38 (Richard Levin & Henry J. Sommer eds., 16th).

---

17/  CPARC also states it has accounts receivables of about $200,000.00. [Doc. #132, p. 9].  However, CPARC did not disclose these additional accounts receivable in its Petition and Schedules. [Doc. #1-3, p. 2].  CPARC also failed to inform the court of how it planned to pursue collection of these assets of the estate.  Courts have held failure to make a good-faith effort to fully pursue its accounts receivables, or failing to provide a reason why such an asset was not being pursued, was a factor in finding "cause." *See e.g.*, *In re Fall*, 405 B.R. 863, 869 (Bankr. N.D. Ohio 2009); *In re 210 W. Liberty Holdings, LLC*, 2009 WL 1522047 at *6, 2009 Bankr. LEXIS 1706 at *17 (Bankr. N.D.W. Va. May 29, 2009)("The Debtor's refusal to pursue collection of an asset of the estate (or to provide a compelling reason why such an asset is not being pursued) constitutes gross mismanagement of the estate.").  Moreover, these additional funds would not be "income," and it was not clear that even these funds, if fully collected, would be sufficient to pay Pender, which asserted it had a claim for CPARC's alleged misconduct in failing to vacate the property located at 1051 N. Canfield-Niles Road, Austintown, Ohio (a/k/a 5455 Clarkins Drive, Youngstown, Ohio 44515) after foreclosure.  Pender supported conversion and opposed dismissal. [Doc. #118, pp. 25:22-26:17; Doc. #116, p. 20:2-13].

Here, CPARC failed to comply with the March 16th Order, an order that arose from an agreement by the parties. This court recognizes that §1112(b)(4)(E) "is not a 'gotcha' provision." *In re Unique Tool & Mfg. Co., Inc.*, 2019 WL 5589085 at *12, 2019 Bankr. LEXIS 3365 at *37. However, the lack of compliance with the March 16th Order under these circumstances is a factor in establishing "cause." *See,* 7 Colliers on Bankruptcy, ¶1112.04[6][e] at 1112-38 (Richard Levin & Henry J. Sommer eds., 16th). At the March 15th hearing, Mr. Rucci agreed that he would provide the bank records to the UST, [Doc. #118, p. 31:15-23], and this court entered an order directing CPARC to provide the UST with an accounting of all post-petition transactions. [Doc. #76]. However, CPARC did not comply with the March 16th Order, a fact that CPARC acknowledges, because it failed to send the full accounting of "all post-petition bank transactions" by the date required. Even if the spreadsheet provided a day late did satisfy the March 16th Order (which it did not) CPARC failed to provide the required documentation by the date set forth in this court's order. This failure to comply with the March 16th Order accelerated the time frame for the court's ruling on the UST's Motion to Convert. ("at which time the Court may rule on the Motion to Convert.")[Doc. #76, p. 2]. Considering the facts surrounding the March 16th Order, the failure to timely provide an accounting of "all post-petition bank transactions, including all deposits, withdrawals, or other transfers" to the UST was a factor in finding "cause."

In addition, CPARC's failure to open a DIP Account immediately after the filing of the Chapter 11 case was also a factor supporting the finding of "cause." Failure to timely open and establish a debtor-in-possession account has been held to constitute "cause." For example, in *In re Congaree Triton Acquisitions, LLC*, the court held that failure to timely establish a debtor-in-possession account after the petition date was sufficient evidence of gross mismanagement of the estate. 492 B.R. 843, 853 (Bankr. D.S.C. 2012). *See also, In re Mickler*, 324 B.R. 613, 618 (Bankr.

W.D. Ky. 2005)("[Debtor] did not file monthly operating reports and did not immediately set up his debtor in possession bank account."), *aff'd*, 344 B.R. 817 (W.D. Ky. 2006), *aff'd sub nom. Mickler v. Mickler*, 256 F. App'x 773 (6th Cir. 2007). Here, CPARC failed to promptly open a DIP Account. Further, the UST stated the untimely spreadsheet, which appeared to be redacted in parts, and which included personal expenses, left the UST with more questions than answers.

A similar financial disclosure obligation is the requirement that Chapter 11 debtors file monthly operating reports. A debtor's failure to file monthly operating reports has been held to constitute "cause." [18] For example, in *In re Mickler*, the debtor failed to comply with the requirements imposed on Chapter 11 debtors, including the requirement to file monthly operating reports. *See,* 324 B.R. at 618. *See also, In re Congaree*, 492 B.R. at 852-53. Accordingly, the failure to file monthly operating reports was a distinct and separate underlying fact the courts in *In re Mickler* and *In re Congaree* held supported a finding of "cause." *In re Mickler*, 324 B.R. at 618; *In re Congaree*, 492 at 852-53. Here, CPARC did not file the monthly operating reports for January 2022 and February 2022. [Doc. #80, p. 2 ¶5]. The failure to provide timely financial information supported the court's finding of "cause."

CPARC argues that the UST's Motion to Convert was based on a false assumption that CPARC made post-petition deposits into the People Banks Account. This court, however, did not make such an assumption. There were post-petition withdrawals of estate funds from the

---

[18] The requirement that debtors-in-possession file monthly operating reports is encompassed by §1112(b)(4), and bankruptcy courts routinely hold that a debtor's failure to comply with reporting requirements constitutes "cause." *In re Four Wells Ltd.*, 2016 WL 1445393 at *10, 2016 Bankr. LEXIS 1673 at *28 (B.A.P. 6th Cir. Apr. 12, 2016)(citing *In re Rondaxe Props., LLC*, 2015 WL 6956521 at *2, 2015 Bankr. LEXIS 2140 at **6-7 (Bankr. W.D.N.Y. June 30, 2015)(debtor's failure to file monthly operating reports established cause for dismissal under §1112(b)(4)(H))); *Serron Invs., Inc. v. Pacifica L22* (*In re Serron Invs., Inc.*), 2012 WL 2086501 at *6, 2012 Bankr. LEXIS 2625 at *12 (B.A.P. 9th Cir. June 8, 2012)(same); *In re GEL, LLC*, 495 B.R. 240, 245 (Bankr. E.D.N.Y. 2012)(same). *See also, In re MCM Nat. Stone, Inc.*, 2022 WL 1074065 at *2, 2022 Bankr. LEXIS 897 at *10 (Bankr. W.D.N.Y. Apr. 8, 2022)(failure to file timely monthly operating reports provided an independent basis for the court to find cause under §1112(b)(4)(F)).

22-40065-jpg    Doc 149    FILED 06/10/22    ENTERED 06/10/22 17:06:23    Page 28 of 50

Peoples Bank Account, and those withdrawals were not timely disclosed.

Accordingly, for all these reasons this court found "cause." Therefore, to the extent Mr. Rucci and CPARC argue the record did not support a finding of "cause," this argument is unlikely to succeed on appeal.

2. CPARC and Mr. Rucci's Proposal to Pay Listed Non-Insider Creditors and Then Dismiss the Case.

"After a finding of cause, 'the court's discretion is limited; it must grant some form of relief unless §1112(b)(2) applies.'" *La Trinidad Elderly LP SE v. Loíza Ponce Holdings LLC* (*In re La Trinidad Elderly LP SE*), 627 B.R. 779, 798 (B.A.P. 1st Cir. 2021)(quoting *In re Korn*, 523 B.R. 453, 465 (Bankr. E.D. Pa. 2014)). Thus, once a bankruptcy court finds that "cause" exists under §1112(b)(1), conversion or dismissal is mandatory unless the "unusual circumstances" exception in §1112(b)(2) is satisfied.[19] *In re Westgate Properties, Ltd.*, 432 B.R. 720, 722 (Bankr. N.D. Ohio 2010)(noting the enactment of BAPCA changed the statutory language of §1112(b) from a permissive "may" to a mandatory "shall").

Once the movant has established "cause," the burden shifts to the respondent to demonstrate "unusual circumstances" that establish that dismissal or conversion is not in the best interests of creditors and the estate. 7 Colliers on Bankruptcy, ¶1112.05[2] at 1112-50 (Richard Levin & Henry J. Sommer eds., 16th)("Courts have much discretion in making the determination as to whether there are unusual circumstances that should prevent dismissal or conversion."). This exception under §1112(b)(2) only applies when the court finds and identifies "unusual circumstances" establishing that conversion or dismissal is not in the best interests of creditors and

---

19/ Section 1112(b)(1) provides a separate exception that precludes conversion or dismissal if the court determines that the appointment of a trustee or an examiner under §1104(a) is in the best interests of creditors and the estate. In a case under Subchapter V, the court cannot appoint a trustee under §1104 because that section does not apply. 11 U.S.C. §1181(a).

22-40065-jpg    Doc 149    FILED 06/10/22    ENTERED 06/10/22 17:06:23    Page 29 of 50

the estate, coupled with a showing under §§1112(b)(2)(A) and (B), which generally requires: a reasonable likelihood of timely plan confirmation and a reasonable excuse for an act or omission by the debtor.[20]   CPARC and Mr. Rucci argue that they can pay all creditors and dismiss the case, which present "unusual circumstances." *See e.g.*, [Doc. #102, p. 5, ¶20]("Debtor can immediately pay all creditors in a conditional dismissal or pay the creditors upon plan approval which will be timely filed before April 30, 2022.").

Although the Bankruptcy Code does not define "unusual circumstances," the word "unusual" contemplates facts that are not common to Chapter 11 cases generally. *In re Fall*, 405 B.R. 863, 870-71 (Bankr. N.D. Ohio 2009); *In re Orbit Petroleum*, 395 B.R. 145, 149 (Bankr. D.N.M. 2008).[21]   The fact that a plan has been filed or that the estate may have some equity in real property does not rise to the level of an "unusual circumstance." *In re Fall*, 405 B.R. at 870-71.   Instead, the "unusual circumstances" must demonstrate that the purpose of the Chapter 11 would be better served by maintaining the case as a Chapter 11 proceeding. *Id.*   Here, there was no indicia that "unusual circumstances" were present that demonstrated that the purpose of Chapter 11 would be better served by maintaining the case as a Chapter 11 proceeding.   Moreover, no plan had been filed.

---

20/   The party opposing dismissal or conversion must demonstrate that (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time, (2) the cause for dismissal or conversion is other than continuing loss or diminution to the estate without reasonable likelihood of rehabilitation, and (3) there is a reasonable justification for the act or omission of the debtor constituting cause and the act or omission will be cured within a reasonable time. *See,* 7 Colliers on Bankruptcy, ¶1112.05[2] at 1112-50 (Richard Levin & Henry J. Sommer eds., 16th). *See also, In re Kearney*, 2020 WL 5534528 at *4, 2020 Bankr. LEXIS 1273 at **9-10 (Bankr. D.N.M. May 13, 2020)(Thuma, J.).

21/   CPARC and Mr. Rucci rely on *In re Orbit Petroleum* for the proposition that paying creditors in full as the effective date of a plan constitutes "unusual circumstances."   In *In re Orbit Petroleum*, the debtor had already filed a plan that purported to pay all creditors in full on the effective date.   Moreover, the debtor in *In re Orbit* did not propose to dismiss the case upon the effective date of any plan.   The circumstances in *In re Orbit* differ significantly from the facts here.   CPARC had not filed a plan, CPARC merely proposed that it could be entrusted to pay listed creditors and then dismiss the case.   Additionally, the assertion that CPARC would "pay creditors in full" failed to consider unlisted creditors, or creditors with claims that were greater than the amounts listed in CPARC's Schedules. In other words, it was a proposal to pay the creditor's CPARC agreed were creditors in amount CPARC thought they were owed.

30

In response, CPARC argues the proposal to pay listed creditors in full constitutes "unusual circumstances" and that the UST objected to CPARC's "plan" of paying creditors in full and dismissing the case. First, CPARC's proposal was not part of a plan, and did not ensure compliance with the Bankruptcy Code's priorities because it only applied to listed creditors, and the bar dates for filing proofs of claim had not passed. Importantly, Pender had not yet filed its proof of claim. CPARC's proposal for a "structured dismissal" failed to consider any claims by creditors that had not been listed, and who still had time to file timely proofs of claim. In other words, CPARC was only offering to pay listed claims, and its assertion that it could pay creditors "in full" came with no assurance that these proposed payments would comply with the Bankruptcy Code's priority scheme. Second, the UST objected to any proposal that entailed a distribution and dismissal before liquidation of all claims, since such a proposal would result in distributions that would not follow the Bankruptcy Code's priority rules. *See*, *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 983, 197 L.Ed.2d 398 (2017)(holding a bankruptcy court cannot approve a structured dismissal that provides for distributions that do not follow ordinary priority rules without the affected creditors' consent). In sum, the proposal to pay creditors "in full" was based on paying only creditors as listed by CPARC on its Petition and Schedules, ignoring any potential claims by Pender or other unlisted creditors.

CPARC and Mr. Rucci's proposal failed to consider that priority-defying distributions do not comply with *Jevic*'s holding, and cannot be approved. Here, an early distribution and/or structured dismissal that complied with *Jevic* presented very substantial difficulties. The claims bar date had not passed nor had the claims allowance process been commenced. The court did not know whether Pender would file a claim for administrative expenses and/or general unsecured claims. Further, compliance with *Jevic*'s directive not to violate the Bankruptcy Code's

31

provisions would be difficult and time consuming because the result the bankruptcy process would finally produce in terms of allowed claims and their priority was unknown.

In in any event, *Jevic* holds "structured dismissals" are not allowed over the objection of an impaired class of creditor(s). Pender asserted that it held claims against CPARC and objected. There is also no obligation for the court to allow a debtor-in-possession to craft a structure dismissal over the objections of other parties in interests. There is no provision in the Bankruptcy Code specifically providing a statutory framework for a structured dismissal. The Bankruptcy Code simply provides for conversion or dismissal.

Moreover, establishing any mechanism for the "structured dismissal" would have been problematic over the objections of the UST and Pender.

Because "cause" was established, the court was required to either dismiss or convert the case. In fact, CPARC and Mr. Rucci requested dismissal.

### 3. "Best Interests of Creditors and the Estate."

Dismissal or conversion depends on what is "in the best interest of creditors and the estate."[22] 11 U.S.C. §1112(b)(1). CPARC argues that this court did not consider dismissal over conversion. Once cause for relief is shown, a bankruptcy court has wide discretion to either convert or dismiss the Chapter 11 case. *Gateway N. Ests. v. U.S. Tr.* (*In re Gateway N. Ests., Inc.*),

---

22/  Mr. Rucci asserts that "an equity shareholder in a Subchapter V has more rights than elsewhere because of the various protections of its ownership." [Doc. #101, p. 12]. Mr. Rucci fails to point to any statute that requires the court to elevate Mr. Rucci's rights over those of higher priority creditors in determining whether to convert or dismiss a Chapter 11 case. Section 1112(b), the statutory subsection at issue, does not require the court to balance the interest of Mr. Rucci, as an equity security holder. *Compare generally,* 11 U.S.C. §§305(a)(1)("the interests of creditors and the debtor"); 543(d)(1)("the interests of creditors and, if the debtor is not insolvent, of equity security holders"); 721 ("the best interest of the estate"); 1104(a)(2)("the interests of creditors, any equity security holders, and other interests of the estate"); 1104(c)(1)("the interests of creditors, any equity security holders, and other interests of the estate"); 1112(b)(1)("the best interests of creditors and the estate"); 1129(a)(5)(A)(ii)("the interests of creditors and equity security holders and [ ] public policy"); 1307(c)("the best interests of the creditors and the estate"); 1307(e)("the best interest of the creditors and the estate"). *See, Cap. Management Co. v. Alison Corp.* (*In re Alison Corp.*), 9 B.R. 827, 829 (Bankr. S.D. Cal. 1981)("The debtor or its equity holders are the last category of persons or entities which the code is designed to benefit."). There is no such requirement in §1112(b). Section 1112(b) uses the term "creditors" and does not include the term "equity security holder(s)."

165 B.R. 427, 428 (E.D. Mich. 1994). *Accord In re 461 7th Avenue Market, Inc.*, 2022 WL 836789 at *2, 2022 U.S. Dist. LEXIS 49932 at **4-5 (S.D.N.Y. Mar. 21, 2022). Although this discretion is not completely unfettered, a bankruptcy court need not give exhaustive reasons for choosing conversion over dismissal. *In re 461 7th Avenue Market, Inc.*, 2022 WL 836789 at *2, 2022 U.S. Dist. LEXIS 49932 at **4-5; *La Trinidad Elderly LP SE*, 627 B.R. 779, 803 (B.A.P. 1st Cir. 2021); *Koerner v. Colonial Bank* (*In re Koerner*), 800 F.2d 1358, 1368 (5th Cir. 1986)("The bankruptcy judge is not required to give exhaustive reasons for his decision. He is only required to comply with 11 U.S.C. §1112(b)[.]").

Here, the UST and Pender both requested conversion, and both expressly requested that the court not dismiss the case. UST and Pender argued dismissal would not be in the best interests of the creditors and the estate. Mr. Rucci opposed conversion and advocated for dismissal.[23] Although a court should not base its decision to convert or dismiss upon a finding that the consensus favors dismissal or conversion, *In re Cont'l Holdings Inc.*, 170 B.R. 919, 937 (Bankr. N.D. Ohio 1994), Pender advocated for conversion, not dismissal.[24] Conversion would allow a forum for prompt resolution of disputed claims. Dismissal would not. Conversion would also allow proper investigation and supervision of estate assets. These were factors in the court's finding that conversion was in the best interests of the creditors.

In addition to being in the best interests of creditors, conversion was also in the best interest of the estate. The best interest of the estate has been noted to include "protecting the bankruptcy process under which the estate is administered." *In re Capra*, 614 B.R. 291, 299 (Bankr. N.D. Ill.

---

23/  It should be noted that Mr. Rucci never formally filed a motion for an order dismissing this Chapter 11 case for "cause." Instead, Mr. Rucci objected to the UST's Motion to Convert. However, he did not show that "cause" was not present for conversion or dismissal.

24/  Pender was not listed as a creditor in Schedules D or E/F. However, since the entry of the Conversion Order, [Doc. #88], Pender filed a proof of claim in the amount of $1,106,000.00, [Doc. #121, p. 2]. If this claim is allowed, Pender would likely be the largest creditor in the case.

33

2020). A prompt resolution of the case under the supervision of a Chapter 7 Trustee was in the best interest of the estate.

Conversion was also in the best interest of the estate because of Mr. Rucci's personal interest in litigating these claims. For example, in *In re FRGR*, the court recognized that the Chapter 11 debtor's claims were "in fact, claims really being pressed by the Debtor's principal," 419 B.R. at 579, and the debtor's principal appeared "to be acting in his own personal interest rather than the interests of the estate and its creditors," resulting in the court converting the case to a proceeding under Chapter 7 rather than dismissing the Chapter 11 case. *Id.* at 585. As in *In re FRGR*, there is an element of personal interest – using creditor money for speculative litigation – which was a factor in finding that the better course was conversion. Mr. Rucci appeared to be acting in his own personal interest, based on a very optimistic view of the litigation, rather than an objective view of the interests of the estate and its creditors. *Cf. In re Sann*, 2015 WL 1943911 at *7, 2015 Bankr. LEXIS 1462 at *24 (Bankr. D. Mont. Apr. 29, 2015)("[Creditor] complains that the Debtor has enjoyed the benefits of [the] Bankruptcy Code without satisfying its burdens, including the fiduciary duties imposed upon him as a Debtor-in-Possession, and now he wants to dismiss for his own benefit rather than the benefit of creditors.").

The alternative here would be to dismiss this case, despite the UST's and Pender's objections, leaving Pender and CPARC to their non-bankruptcy court remedies, for at least the third time. Dismissal would require the court to believe that Mr. Rucci would abide by his verbal commitments to pay creditors, despite there being no ready enforcement mechanism for creditors to seek recourse.[25] The history of California Palms, CPARC, and Mr. Rucci did not support a

---

25/ For example, CPARC, California Palms, and Mr. Rucci entered into a contract that incorporated a transcript from a hearing at the state court with Pender. Despite the existence of this enforcement mechanism, CPARC, California Palms, and Mr. Rucci did not complete the agreement, asserting.

finding that the preponderance of the evidence weighs in favor of that level of trust.

Mr. Rucci has exhibited a pattern of failing to perform on agreements he made – he always has reasons why it was not his fault, which he argues eloquently – but the fact remains he "exhibits a pattern of attempting to undo freely-entered-into, court-supervised agreements [particularly with Pender] shortly after they were reached." *In re Cal. Palms, LLC*, 2020 WL 728788 at *8, 2020 Bankr. LEXIS 77 at *21. Similarly, in this case, CPARC and Mr. Rucci agreed to provide the UST with bank records and an accounting of "all" post-petition transactions, bank records, etc., which included the Peoples Bank Account, by March 30th. CPARC and Mr. Rucci failed to comply with the March 16th Order.

Mr. Rucci also has a history of overvaluing the strength of this legal arguments. Mr. Rucci has repeatedly presented this court with arguments as to why he is certain to win – then he fails to prevail. This happened again with the district court litigation. This history does not weigh in favor of allowing him to unilaterally make decisions on how to spend the money CPARC has in its bank account and CPARC's accounts receivables. The history of Mr. Rucci's bullish overconfidence is a factor in the court preferring a Chapter 7 Trustee's more objective view of the litigation as being more in keeping with the best interests of creditors and the estate.

That said, as the court in *In re FRGR* recognized, a "chapter 7 Trustee can certainly move to dismiss the case subsequently, if the trustee concludes that such relief is in the best interests of the estate." 419 B.R. at 580.

In sum, looking to the circumstances of this case as a whole, the court found "cause" was established, and that this Chapter 11 case should be converted to Chapter 7 under §1112(b). CPARC and Mr. Rucci's arguments that this court erred in finding "cause," rejecting the proposal to entrust Mr. Rucci to pay listed non-insider creditors, and converting the case to a Chapter 7

35

proceeding are unlikely to succeed on the merits of the appeal. For these reasons, the first stay factor weighs against granting a stay pending appeal. "When a party has no likelihood of success on the merits, [the court] may not grant a stay." *Tiger Lily, LLC v. U.S. Dep't Hous. & Urb. Dev.*, 992 F.3d 518, 522 (6th Cir. 2021). *Accord Luxshare, Ltd.*, 15 F.4th at 783 ("But while the party seeking a stay 'need not always establish a high probability of success on the merits,' the party 'is still required to show, at a minimum, "serious questions going to the merits."'" (quoting *Griepentrog*, 945 F.2d at 153-54)). *Cf. Sunless, Inc. v. Palm Beach Tan, Inc.*, 33 F.4th 866, 868 (6th Cir. 2022)("And a failure to establish a likelihood of success on the merits '"is usually fatal" to a plaintiff's quest for a preliminary injunction.'" (quoting *Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020))).

**B. Second Factor: "The Likelihood That the Moving Party Will be Irreparably Harmed Absent a Stay."**

The second factor in determining whether to grant a stay is "the likelihood that the moving party will be irreparably harmed absent a stay." In evaluating the "harm" element courts look at three factors: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 945 F.2d at 154. Additionally, in evaluating the degree of injury, the "key word in this consideration is *irreparable*." *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974))(emphasis in original). Mere injuries, however substantial, in terms of money, time, and energy necessarily expended with no stay, are not enough. *Id.* "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*

CPARC and Mr. Rucci argue that unless a stay pending appeal is granted, preserving the "status quo" CPARC's pending lawsuits or claims will be lost and/or the Chapter 7 Trustee may

compromise CPARC's pending lawsuits or claims for less than they are worth. CPARC asserts these claims are valued in the millions. *See e.g.*, [Doc. #102, p. 11, ¶47]("The liquidation will also deny review of the breach by OMHAS and eliminate the damages that are collectible from OMHAS."); [*Id.*, p. 11, ¶48]("Movant's efforts for return of $603,902 presently pending in a civil forfeiture case against the Government will also end if the case is converted."). For example, Mr. Rucci states that if CPARC's certification and/or license is not reinstated, then a civil rights lawsuit against Ohio Department of Mental Health and Addiction Services will be lost, resulting in the loss of a "settlement or trial worth millions." [Doc. #132, p. 9]. But this is mere speculation. Under *Griepentrog*, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." 945 F.2d at 154. *Accord In re McInerney*, 490 B.R. 540, 547 (Bankr. E.D. Mich. 2013).

The facts in *In re McInerney* are analogous to this case. There, the bankruptcy court rejected the debtor's argument that he feared "that unless the bankruptcy court stayed the order converting the case from Chapter 11 to a proceeding under Chapter 7, "the Chapter 7 Trustee may compromise, for less than it is worth, the Debtor's claim against [creditor], which Debtor says 'is valued at $15 million and is the subject of a pending appeal in the Michigan Court of Appeals.'" *In re McInerney*, 490 B.R. at 547. The court also noted that debtor's prepetition claim against the creditor may be worth "*nothing*" because the debtor "*lost* entirely at the state trial court level." *Id.* (emphasis in original). *McInerney* held, in applying *Griepentrog*, that the debtor's alleged harm was purely speculative and thus the debtor failed to show a likelihood of irreparable harm. *Id.* ("Debtor hopes to revive this lost claim on his pending appeal to the Michigan Court of Appeals, but his Stay Motion says nothing to justify any prediction that Debtor will likely succeed in his pending state court appeal.").

CPARC and Mr. Rucci make arguments of "harm" similar to those that were rejected in *McInerney*. The problem with the "harm" Mr. Rucci alleges are two-fold. First, Mr. Rucci may overvalue the strength of his legal claims. Mr. Rucci's argument, for example, that an action against Ohio Department of Mental Health and Addiction Services could result in a trial or settlement worth millions, is speculative. Second, if the Trustee seeks to settle claims for less than Mr. Rucci believes they are worth, he can object to the settlement and/or make a higher offer to buy the claims from the Chapter 7 estate.

Additionally, any "harm" to CPARC is lessened because it is not an operating business. The other potential harms CPARC alleges turn on its potential success on appeal of the Conversion Order[26] and its success on matters separate from the bankruptcy case that are pending in other courts. For example, CPARC argues that the Conversion Order ends a viable business because CPARC will be unable to pursue litigation to reinstate its license. But this court's order did not revoke CPARC's license. CPARC's license to operate as a business terminated before it filed bankruptcy. Instead, this court's order merely put the decision to pursue litigation in the hands of a Chapter 7 Trustee.[27]

CPARC argues a stay pending appeal maintains the status quo. A stay pending appeal to is to maintain the status quo and to prevent harm to the moving party between the time the original

---

26/ As explained below, CPARC alleges the UST's actions implicate due process issues because CPARC was left without counsel at the hearing. The UST previously objected to Mr. James Vitullo's application to employ, as the application failed to disclose Mr. Vitullo's associations with CPARC, CPARC's affiliates, and Mr. Rucci in both personal and professional capacities. On April 3, 2022, Mr. Vitullo filed a motion to withdraw as counsel in which he indicated he was unable to overcome the UST's objections. CPARC had counsel until the April 5th hearing, meaning CPARC had counsel for all the actions constituting "cause" for dismissal or conversion. In other words, the actions constituting "cause" all occurred before April 5 while CPARC had counsel.

27/ For example, Mr. Rucci states that a civil rights lawsuit against Ohio Department of Mental Health and Addiction Services will either secure the licensing for reopening or result in a "settlement or trial worth millions." [Doc. #132, p. 9]. If that is true, the Chapter 7 Trustee would have the option of filing the lawsuit.

order was entered and the decision on appeal. *See, In re Gress*, 435 B.R. 520, 523-24 (Bankr. S.D. Ohio 2010). *See also, In re Edwards*, 228 B.R. 573 580 (Bankr. E.D. Pa. 1999)(noting "that something more than preservation of the status quo is necessary to show irreparable harm"). Here, CPARC does not describe the substantial benefits that would stem from a stay pending appeal, other than maintaining the status quo. This court cannot discern how maintaining the status quo benefits creditors and potential holders of claims, but assuming that a stay does somehow benefit creditors and potential holders of claims, it is outweighed by the detriment due to the delay in administration of the bankruptcy case. The result of a stay would be to delay the prompt administration of the bankruptcy case.

A stay would not reconvert the case to Chapter 11. Nor would a stay release any funds from the estate.

In sum, the Conversion Order did not release the litigation assets from the estate. Instead, the Conversion Order substituted the Chapter 7 Trustee's independent and objective judgment in determining how and whether to pursue the claims. Thus, this factor does not support a stay pending appeal.[28]

---

28/ CPARC, in asserting it would be "harmed," argues that conversion under §1112 violates the First Amendment and is "most likely a Fifth Amendment taking issue as well." CPARC's constitutional arguments are at worst new arguments raised that should have been raised before the entry of the Conversion Order, and at best are underdeveloped or premature. CPARC argues the order converting the case implicates CPARC's and Mr. Rucci's "First Amendment right to seek redress of grievances by suing the Government." [Doc. #132, p. 15]. The argument goes that, absent a stay, CPARC's and Mr. Rucci's First Amendment freedoms will be irreparably injured. The *Noerr-Pennington* doctrine refers to the First Amendment aspect of antitrust law and provides private immunization from alleged violations of the Sherman Act – the right to seek redress of governmental grievances. *VIBO Corp., Inc. v. Conway*, 669 F.3d 675, 683-84 (6th Cir. 2012). This is not an antitrust case. This court also concludes that conversion does not amount to a "Fifth Amendment taking issue." First, legal claims have not been taken for public use, instead claims would be used to pay CPARC's creditors and the administrative claims of the estate. *In re Ordonez*, 2018 WL 1135498 at *4, 2018 Bankr. LEXIS 553 at **10-11 (Bankr. D. Utah Feb. 28, 2018). Second, when CPARC filed bankruptcy, it should have known that the Bankruptcy Code may adjust its property rights and that there was a possibility that the case could be converted. *Cf. In re Davis*, 539 B.R. 334, 350 (Bankr. S.D. Ohio 2015)(collecting cases holding §522(f) does not violate the Takings Clause because a creditor should have known that the Bankruptcy Code may impact a creditor's property interest upon the filing of a bankruptcy case). Although the UST is a an agency of the United States and a party here, CPARC also failed to provide adequate notice under the applicable rules of procedure. A constitutional challenge is governed by Fed. R. Civ. P. 5.1, which makes Fed. R. Civ. P. 5.1 applicable to bankruptcy proceedings. Rule 5.1 provides that a party drawing into question the constitutionality of a

**C. Third and Fourth Factors: "The Prospect That Others Will Be Harmed If the Court Grants the Stay" and "The Public Interest in Granting the Stay."**

The third and fourth stay factors, "the prospect that others will be harmed if the court grants the stay"; and "the public interest in granting the stay," both weigh against granting a stay pending appeal.

The granting of a stay would harm creditors and potential claim holders. A stay would result in delay of the liquidation process, preventing the Chapter 7 Trustee from quickly and efficiently carrying out his statutory duties. Public interests also weigh against granting a stay. The "public interest, as expressed by Congress in several ways in the Bankruptcy Code, favors the prompt administration of bankruptcy cases." *In re McInerney*, 490 B.R. at 548. A stay would only further delay prompt administration of the bankruptcy case. In response, CPARC argues that converting the case puts at risk future employees and future clients, who do not presently exist. However, the public interest is not harmed by denial of the stay since CPARC does not currently have any employees or clients. CPARC, an entity with no income and no employees, has not shown that there is a public interest in granting the stay. In contrast, the interest of the creditors in expeditiously resolving this case support denial of a stay pending appeal.

Accordingly, weighing all the relevant factors, this court determines that CPARC and Mr. Rucci have not met their burden of establishing by a preponderance of the evidence their entitlement to a stay pending appeal. In the exercise of its discretion under Fed. R. Bankr. P. 8007, the court will deny the Motion for Stay, without prejudice to CPARC's right to seek a stay from the appellate court(s).

---

federal statute must promptly "file a notice of constitutional question stating the question and identifying the paper that raises it," if "a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity" and "serve the notice and paper on the Attorney General of the United States if a federal statute is questioned." It appears CPARC and Mr. Rucci did not "serve the notice and paper on the Attorney General of the United States if a federal statute is question."

40

### III. __Motion for Relief from Judgment.__

CPARC and Mr. Rucci's Motion for Relief from the Conversion Order is brought under Fed. R. Bankr. P. 9024, which makes Fed. R. Civ. P. 60 applicable to bankruptcy proceedings. The Motion for Relief seeks to vacate the Conversion Order for "surprise" under Rule 60(b)(1) and because the "judgment is void" under Rule 60(b)(4).

The "party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Satyam Computer Servs., Ltd. v. Venture Global Eng'g, LLC*, 323 Fed. App'x 421, 427 (6th Cir. 2009)(quoting *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008)). Relief "under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001)(quoting *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)).

### A. __Rule 60(b)(1).__

A court may vacate a final judgment under Rule 60(b)(1) based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Rule 60(b)(1) "is intended to provide relief in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Vargo v. D & M Tours, Inc.*, 841 F. App'x 794, 799 (6th Cir. 2020)(quoting *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002)), *cert. denied*, 142 S.Ct. 99, 211 L.Ed.2d 26 (2021). In evaluating whether relief under Rule 60(b)(1) is appropriate, courts consider the following factors: "(1) whether the party seeking relief is culpable; (2) whether the party opposing relief will be prejudiced; and (3) whether the party seeking relief has a meritorious claim or defense." *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003).

The burden of establishing that Rule 60(b)(1) applies is on the party seeking to invoke it.

*See, McCurry ex rel. Turner v. Adventist Health System/Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002); *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002). "It is well settled that the [ruling on] a motion to set aside judgment under Rule 60(b)(1) is a matter addressed to the sound discretion of the" court. *FHC Equities, L.L.C. v. MBL Life Assurance Corp.*, 188 F.3d 678, 683 (6th Cir. 1999)(quoting *Lewis v. Alexander*, 987 F.2d 392, 396 (6th Cir. 1993))

CPARC's Motion for Relief fails to establish that it is entitled to relief under one of the two grounds established by Sixth Circuit precedent in *Reyes*. CPARC's Motion for Relief exclusively focuses on the word "surprise" under Rule 60(b)(1). CPARC argues that the UST made a "surprise oral motion" and changed the nature of the hearing.[29] This argument, premised on a theory of "surprise," does not meet the standards required by Sixth Circuit precedent.

CPARC premises its "surprise" argument on the theory that the UST made a "surprise oral motion" at the hearing on April 5, 2022, by changing "tactics from post-petition deposits, to post-petition expenses," and was therefore an "ambushed" motion. [Doc. #103, p. 14, ¶9.4]. CPARC's other arguments rely on a similar premise, e.g., "[t]he U.S. Trustee just showed up and surprised Movants with new arguments that were not addressed either directly or indirectly in the U.S.

---

[29] This court is not persuaded that this is the type of "surprise" that Rule 60(b)(1) was meant to address. Although the "requirements for a claim of 'surprise' under Rule 60(b)(1) are unclear and ill-defined," *Bloodworth v. Timmerman-Cooper*, 2011 WL 1740031 at *2 (S.D. Ohio May 5, 2011)(citing *Denney v. Zimmer US, Inc.*, 2006 WL 2167270 at *2 (M.D. Tenn. Aug. 1, 2006)), the Sixth Circuit has held a party has "clearly established surprise" when a party "was unaware that a lawsuit had been filed until after the default judgment had been entered." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir. 1996); *see also*, *McLindon v. Russell*, 2000 WL 1221816 at *2 (S.D. Ohio Feb. 28, 2000)(finding surprise when parties were unaware of judgments that affected their rights). CPARC's "surprise" argument does not fall under the same facts for seeking relief from a default judgment. In any event, determining the exact legal definition of "surprise" is unnecessary because the Conversion Order should not have surprised the parties under any reasonable definition of the word.

The relief requested, and subsequently granted, never changed and should not have been a surprise. The UST moved to convert the case on February 18, 2022. [Doc. #36]. The UST was the second party in interest that moved for conversion and based its motion, in part, on the use of the Peoples Bank Account. CPARC and Mr. Rucci have failed to show the kind of "unawareness" entitling them to "relief under Rule 60(b) because of surprise." *In re Gundrum*, 509 B.R. 155, 164 (Bankr. S.D. Ohio 2014). Accordingly, the request for relief for "surprise" under Rule 60(b)(1) is denied.

22-40065-jpg    Doc 149    FILED 06/10/22    ENTERED 06/10/22 17:06:23    Page 42 of 50

Trustee's Motion." [*Id.*, p. 15, ¶9.8]. CPARC and Mr. Rucci argue that the UST's new arguments included, in part, the post-petition expenses. However, the court specifically required an accounting of all post-petition transactions at the conclusion of the March 15th hearing. [Doc. #118, p. 28:12-17]("we also need some accounting of what the heck happened to the funds from the date of filing until now. And I'm talking about, you know, bank accounts, et cetera, being provided to the Trustee and the Office of the U.S. Trustee, you know, so that they can understand what happened here."). Moreover, the Weaver Declaration stated the UST had not been provided with post-petition bank transactions, including deposits, withdrawals, or other transfers. "Withdrawals" necessarily included any post-petition expenses not disclosed. Additionally, the term "post-petition transactions" – used in the court's March 16th Order – would include withdrawals. The April 5th hearing discussed what was stated in the Weaver Declaration, which was the failure to disclose "all" post-petition transactions. It is difficult to fathom how the discussion of the Peoples Bank Account was a new argument, when one of the reasons for the March 16th Order was for CPARC and Mr. Rucci to provide the UST with all of the activity and/or transactions regarding the Peoples Bank Account.

To the extent CPARC argues that this court made a substantive mistake of law or fact, CPARC has not met its burden. For example, CPARC argues the deposit of funds into the Peoples Bank Account post-petition was a false assumption. But this court did not make such an assumption in its decision to convert the case. Instead, the court found "cause" based on the lack of income, the expenses associated with maintaining the litigation, the failure to provide clear and timely financial information, and because of the fact that the "reasonable likelihood of rehabilitation" had become remote. CPARC makes no argument that this court made a substantive mistake of fact in relying on the uncontroverted evidence that a reasonable likelihood

of rehabilitation within a reasonable time was negatively impacted by the stayed district court litigation. The court also found "cause" based on CPARC's failure to open a DIP Account while the case was pending, which was based, in part, on the sworn testimony of Mr. Rucci during the 341 Meeting.[30] Thus, CPARC has failed to meet its burden of showing its case falls within the provisions of Rule 60(b)(1), and its Motion for Relief under Rule 60(b)(1) is denied.

### B. Rule 60(b)(4).

Rule 60(b)(4) allows a court to "relieve a party" from a final judgment if "the judgment is void." Fed. R. Civ. P. 60(b)(4); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271. The Sixth Circuit has previously held that the movant has the burden of showing a "total want of jurisdiction." *In re G.A.D., Inc.*, 340 F.3d 331, 336 (6th Cir. 2003). The errors that CPARC and Mr. Rucci allege fall in neither category.

CPARC and Mr. Rucci do not argue the Conversion Order suffered a jurisdictional defect rendering it void. Instead, CPARC and Mr. Rucci appear to be proceeding under the second category, arguing that the Conversion Order is void because Mr. Rucci and CPARC were denied due process. "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Espinosa*, 559 U.S. at 272 (citation omitted).

On February 18, 2022, the UST filed its Motion to Convert the Chapter 11 case under §1112(b) detailing "cause," and asserting conversion was in the best interests of creditors and the

---

[30] CPARC and Mr. Rucci's Motion for Relief from Judgment makes other arguments that have already been addressed above. [Doc. #103, pp. 7-11, 16-23].

22-40065-jpg    Doc 149    FILED 06/10/22    ENTERED 06/10/22 17:06:23    Page 44 of 50

estate. Bankruptcy Rule 2002(a)(4) requires twenty-one days' notice by mail of a hearing on the conversion of a Chapter 11 case. The motion was noticed for hearing on March 15, 2022, at 2:00 p.m. [Doc. #38]. The UST filed a Certificate of Service showing that the Motion to Convert was served on CPARC on February 18, 2022. [Doc. #36]. This provided twenty-five days' notice of the initial hearing. This court held the hearing on the date noticed.

Due process was satisfied as the Motion to Convert was properly noticed and a hearing was held. A party that has filed an opposition to a motion to dismiss or convert, and argued at the hearing scheduled on the matter, cannot claim that an order converting a case violated notice and hearing requirements. *See, In re USA Com. Mortg. Co.*, 452 F. App'x 715, 724 (9th Cir. 2011); *see also, In re Lynch*, 795 F. App'x 57, 59 (2d Cir. 2020)("[A] full evidentiary hearing is not required as long as the record permits the bankruptcy court to 'draw the necessary inferences' to determine cause." (quoting *C-TC 9th Ave. P'ship v. Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1312-13 (2d Cir. 1994))). At the March 15th hearing, this court heard arguments and continued the hearing on the UST's Motion to Convert, conditioned on CPARC providing an accounting of all post-petition bank transactions, including all deposits, withdrawals, or other transfers. The March 16th Order stated that failure to provide the required information would be a basis for the court ruling on the UST's Motion to Convert, without any provision for further hearing. Nevertheless, the court set the matter for further hearing, in part to allow Mr. Rucci to address the status of the district court litigation. Mr. Rucci attended every hearing and filed memoranda opposing conversion. This more than satisfied due process, notice, and hearing requirements. CPARC therefore received adequate notice that conversion to Chapter 7 was requested.

For these same reasons, CPARC's argument that this court deprived CPARC of the

45

opportunity to be heard by granting Mr. James Vitullo's motion to withdraw before addressing the Motion to Convert, ultimately leaving CPARC "at a critical hearing without an attorney" lacks merit. [Doc. #103, p. 12, ¶8.1]. The court issued the Order for Show Cause, in part, to address the setback caused by the stayed district court litigation. In issuing the Order for Show Cause, this court wanted to hear from Mr. Rucci, not Mr. James Vitullo. Mr. Rucci was the one with knowledge and control of the district court litigation. At the 341 Meeting, Mr. Rucci provided testimony about the claim for the seized funds and the suit against the United States. [Doc. #69-1, pp. 7-12]. At the March 15th hearing, Mr. James Vitullo informed the court he was not representing "[CPARC] or Mr. Rucci in the claim to get those funds back, approximately $600,000." [Doc. #118, p. 4:5-7]. When this court asked Mr. James Vitullo about the district court litigation, Mr. Vitullo stated "Mr. Rucci can speak to that." [*Id.*, p. 4:17-18]. It was Mr. Rucci, an attorney, not Mr. James Vitullo, who could address the district court setback.

The other issues regarding the Motion to Convert had been previously addressed by Attorney Vitullo (who represented CPARC up until April 5th when this court granted Attorney Vitullo's Motion to Withdraw). *E.g.*, [Doc. ##42, 43, 60]. Mr. Rucci had the facts and knowledge regarding the district court litigation.

Moreover, on February 28, 2022, the UST objected to the application to employ counsel. Pender also objected to his employment. At the hearing on March 15th, this court addressed the potential conflict. Then on April 3, 2022, Mr. James Vitullo filed a motion to withdraw as counsel. If the thought was that this would serve to delay a ruling on the Motion to Convert, that was a mistaken assumption.[31] At the April 5th hearing, no objection was made by any party to

---

31/ This court has previously discussed California Palms' apparent inclination and tendency for "last-minute" filings to "'flip the script' prior to courts deciding issues it has raised." *In re Cal. Palms, LLC*, 2020 WL 728788 at *12, 2020 Bankr. LEXIS 77 at **31-32 ("One final note regarding California Palms' last minute filings . . . . The court finds that these last-minute filings do not change its dismissal analysis because they typify California Palms' pattern of

Attorney Vitullo's motion to withdraw.   Moreover, at the April 5th hearing, the court specifically asked Mr. Rucci if there was any objection to the motion to withdraw.   Mr. Rucci did not object. The court then granted the motion to withdraw.   The record reflects that this court gave CPARC ample time and opportunity to employ counsel to represent CPARC in accordance with the requirements of the Bankruptcy Code. *In re Colon Martinez,* 472 B.R. 137, 143 (B.A.P. 1st Cir. 2012); *In re Junk*, 533 B.R. 639, 645 (Bankr. S.D. Ohio 2015).    The fact that the "disinterestedness" issue was not addressed promptly, when raised, did not entitle CPARC and Mr. Rucci to a delay.   Accordingly, CPARC and Mr. Rucci have not shown a due process violation that would warrant relief from the Order of Conversion.

Additionally, the strict enforcement of the requirements of §327 that a professional employed by a debtor-in-possession must be disinterested, and the requirement to file an employment application verifying the professionals' connections with the debtor, creditor(s), or any other party in interest under Rule 2014, are well settled in the case law. *See e.g.*, *Smith v. Marshall* (*In re Hot Tin Roof, Inc.*), 205 B.R. 1000, 1003 (B.A.P. 1st Cir. 1997); *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005).   CPARC and Mr. Rucci's argument that it was left without counsel at the April 5th hearing fails to reconcile that the law clearly established Mr. Vitullo's former representation of CPARC's affiliated entities, which were creditors in the case, would prevent the court from approving his employment.   They hired counsel of their choice, and had further notice of the issues when the objections were filed on February 28th.   Accordingly, CPARC and Mr. Rucci have not shown a due process violation that would warrant reversal.

As previously discussed, CPARC was also not deprived of due process rights by a "surprise oral motion" or "hearing changes" regarding the Peoples Bank Account.   To prevail on a due

---

submitting itself to both state and federal courts, only to withdraw at the eleventh hour." (citations omitted)).

process claim, a party must establish that the outcome would have been substantially different if a debtor had been given reasonable notice and opportunity to be heard. *Haffey v. Crocker* (*In re Haffey*), 576 B.R. 540, 549 (B.A.P. 6th Cir. 2017); *In re Junk*, 533 B.R. at 648.

The UST's Motion to Convert was based on "cause," including gross mismanagement of the estate. Starting with the Initial Debtor Interview on February 10, 2022, the UST had concerns over the use of estate funds. [Doc. #35, p. 5 n.1]("Mr. Rucci's statements at the [Initial Debtor Interview] created confusion as to which entity's bank account the Debtor has been depositing funds into since November of 2021. Until the [UST] receives the requested bank statements showing the Debtor's deposits since its license was revoked, the [UST] cannot state with certainty into which account the estate's funds are being deposited."). About a month later, Mr. Rucci was questioned about this issue at the 341 Meeting, and provided further testimony about CPARC's use of the Peoples Bank Account. At the conclusion of the 341 Meeting, the UST requested copies of bank statements for any bank accounts CPARC had used. [Doc. #69-1, pp. 76:20-77:2]. At the March 15th hearing, Mr. Rucci agreed to provide the UST with bank records of the Peoples Bank Account. [Doc. #118, p. 31:19-23]. CPARC's purported accounting, by sending a spreadsheet instead of providing bank records, only heightened the UST's concerns. These were not new or surprising issues. They were longstanding.

In any event, CPARC's argument that it was without notice and that the hearing changes deprived them of due process appears somewhat disingenuous.[32] As noted above, this court's

---

32/ CPARC and Mr. Rucci rely on *Mitan v. Duval* (*In re Mitan*), 178 F. App'x 503 (6th Cir. 2006) for the argument that receiving five days' notice on the hearing violated due process rights. However, in *Mitan*, the bankruptcy court did not notify debtor's father after four unsecured creditors petitioned the bankruptcy court to reconsider the dismissal entry and reinstate the bankruptcy case. *Id.* at 504. The bankruptcy court held a hearing on the motion to reconsider, vacated dismissal, and sua sponte converted the case to a Chapter 7 liquidation. *Id.* Debtor's father appealed claiming he did not receive notice of the hearing. The Sixth Circuit reversed the order converting the case because debtor's father did not receive notice. *Id.* Here, CPARC and Mr. Rucci received notice of the UST's Motion to Convert. Mr. Rucci and CPARC also attended the March 15th hearing on the Motion to Convert. CPARC argues that it received only five days' notice. But this court gave CPARC and Mr. Rucci notice that it would rule on the UST's February

March 16th Order stated that if CPARC failed to comply, then the UST may file an affidavit informing the court of CPARC's failure to comply, at which time the court may rule on the Motion to Convert. The March 16th Order did not contemplate any further hearing. Rather than ruling on the Motion to Convert, this court entered the Order to Show Cause. By doing so, this court provided CPARC and Mr. Rucci with an opportunity to be heard a second time. The March 16th Order stated the consequences of failing to comply. Thus, CPARC was on notice of the potential consequences. CPARC and Mr. Rucci have therefore failed to show its case meet the requirements for relief under Rule 60(b)(4), and its Motion for Relief under Rule 60(b)(4) is denied.

IV. **Motion to Suspend Chapter 7 Proceedings.**

CPARC and Mr. Rucci's Motion to Suspend Chapter 7 Proceedings Pending Resolution of Post-Judgment Motions cites no law in support of this motion to clarify the basis for which relief is requested. This motion's arguments appear to be duplicative of the arguments made in the other post-judgment motions. This motion offers no additional argument or authority that would allow this court to "put all the pending issues with the Chapter 7 in abeyance." [ Doc. #112, at p. 1]. Alternatively, this motion is moot since the post-judgment motions have been decided. The motion is thus denied.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that CPARC and Mr. Rucci's *Motion to Alter or Amend a Judgment* [Doc. #101] be, and hereby is, **DENIED**.

**IT IS FURTHER ORDERED** that CPARC and Mr. Rucci's *Motion for Stay of Bankruptcy Court Order [Docket #94] Pending Appeal* [Doc. #102] be, and hereby is, **DENIED**.

---

18th Motion to Convert if CPARC violated the March 16th Order. *Id.* at 507. Instead, this court entered the Order to Show Cause, giving Mr. Rucci and CPARC notice and the opportunity for another hearing. Because this court gave notice to CPARC and Mr. Rucci, *In re Mitan* is not applicable to the facts in this case.

22-40065-jpg    Doc 149    FILED 06/10/22    ENTERED 06/10/22 17:06:23    Page 49 of 50

**IT IS FURTHER ORDERED** that CPARC and Mr. Rucci's *Motion for Relief from Judgment* [Doc. #103] be, and hereby is, **DENIED**.

**IT IS FURTHER ORDERED** that CPARC and Mr. Rucci's *Motion to Suspend Chapter 7 Proceedings Pending Resolution of Post-Judgment Motions* [Doc. #112] be, and hereby is, **DENIED**.

###